UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFRED R. RHINEHART, JR.,

        Plaintiff,

    v.                                        10-CV-86
                                                      DECISION & ORDER

CSX TRANSPORTATION, INC.,

        Defendant.

_____

Eight years ago, a train operated by the defendant, CSX Transportation, Inc.,

severed the legs of the plaintiff, Alfred R. Rhinehart, Jr. Soon after, Rhinehart sued

CSX alleging that the negligent maintenance and operation of its tracks and trains

contributed to his injuries. Docket Item 1-3. Seven years ago, the first case

management order was issued. Docket Item 24. Four years ago, fact discovery was

completed. Docket Item 83. Three years ago, CSX moved for summary judgment.

Docket Item 92. Two years ago, United States Magistrate Judge Leslie G. Foschio

issued a report and recommendation denying the motion. Docket Item 98. And last

year, this Court accepted that recommendation in part. Docket Item 119.

That decision held that "Rhinehart's claim of negligence under the common law is

not preempted as to CSX's duty to deter expected trespassers from using the

cut-through." This Court agreed with CSX that railroads have no general duty to fence

its tracks, but it found that CSX had not established, as a matter of law, that there was

no duty to use barriers, signs, or other means to discourage trespassers from using a

well-known but unauthorized spot to cross. Moreover, the Court found that "because

CSX's internal operating rules were not created pursuant to federal regulation, and because federal regulations preempt common-law liability for CSX's alleged violation of those internal rules, there are no material issues of fact that would preclude summary judgment with respect to a duty to sound a train's horn or to uncouple cars when a train is stopped." *Rhinehart v. CSX Transp., Inc.*, 2017 WL 3500018, at *13 (W.D.N.Y. Aug. 16, 2017) (footnote omitted).

Now, CSX asks this Court to reconsider its denial of summary judgment. Docket Item 123-4. In the alternative, CSX moves this Court for an order granting an interlocutory appeal. CSX attached to its motion the decision in *Moody v. CSX Transportation*, 07-CV-6398, granting summary judgment in part and denying it in part. Docket Item 123-3.

Presumably, CSX attached this decision because the court in that case held that CSX had no duty to erect fences or barriers under New York law. But the court in that case also ruled against CSX, finding that the plaintiff's negligence claim against CSX survived with respect to allegedly failing to sound the train's horn—a claim this Court found preempted by the Federal Railroad Safety Act of 1970 ("FRSA"). Perhaps sensing that CSX had opened Pandora's Box, Rhinehart cross-moved for reconsideration on that finding. Docket Item 127.

## DISCUSSION

Strict standards govern motions for reconsideration and interlocutory appeal. Consequently, those motions are granted only in exceptional and rare circumstances. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Similarly, motions for an interlocutory appeal are generally denied because "only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 529-30 (S.D.N.Y. 2014) (internal quotations, alteration and citation omitted). In fact, the Second Circuit urges "district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992). As discussed below, because neither CSX nor Rhinehart can demonstrate exceptional or rare circumstances that would justify reconsideration or an interlocutory appeal, the motions are denied.

## I.    MOTION FOR RECONSIDERATION

A motion to reconsider must set forth a compelling reason why the court should revisit its prior decision. Reconsideration is appropriate when (1) there is a change of controlling law, (2) there is newly discovered evidence, or (3) there is clear error or an obvious injustice the court must correct or prevent. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Reconsideration is not appropriate, however, when a party simply does not like or disagrees with the outcome of an initial decision and seeks to reargue issues already considered by the court. *See Reed v. Aqueon Products*, 2015 WL 506434, at *2 (W.D.N.Y. Feb. 6, 2015) (citing *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

CSX does not present a change in controlling law or newly discovered evidence, but it claims that this Court committed clear error by misapplying state law. Instead of

identifying the clear error, however, CSX does no more than rehash case law from its summary judgment motion that previously was considered by this Court. Because CSX does not offer anything more than it offered before, its motion to reconsider is denied.

### A.     Duty to Deter Expected Trespassers

CSX claims that under New York law "a railroad does not have a duty to fence its tracks, either in general (as this Court acknowledged) *or* (contrary to the Court's holding) at the many unauthorized crossing throughout the railroad's systems." Docket Item 123-4 at 2. But CSX misstates this Court's initial holding and, in doing so, highlights the nuances in the case law and the unresolved issues of material fact that actually reinforce the denial of summary judgment.

CSX argues that this Court erred in light of New York Railroad Law section 52. In relevant part, that statute provides that "[n]o railroad need be fenced, when not necessary to prevent horses, cattle, sheep and hogs from going upon its track from the adjoining lands." N.Y.R.R. Law § 52. According to CSX, that provision relieves railroads of any duty to deter expected trespassers—specifically, to erect barriers or to warn expected trespassers of danger.

This Court agrees with CSX that section 52 does not "safeguard any individual who might unconsciously trespass upon the right of way." *DiCaprio v. N.Y. Cent. R.R., Co.*, 231 N.Y. 94, 98 (1921). But saying that there is no duty to fence railroad tracks except to protect livestock does not mean that there never is a duty to discourage trespassers from using a well-known cut-through, as was the case here. What is more, the supporting cases CSX cites are distinguishable. And most important on a motion for

reconsideration, many of the cases on which CSX now relies were cited in its motion for

summary judgment and were already considered by this Court.  Docket Items 92, 97.

Even though CSX has no statutory or common-law obligation to fence its tracks,

it still has a heightened duty to expected trespassers.  *Bowen v. Nat'l R.R. Passenger*

*Corp.*, 363 F. Supp. 2d 370, 375 (N.D.N.Y. 2005) ("the law has developed such that it

recognizes a higher duty of care where the railroad has knowledge of a person's entry

and the scope of the duty expands in relation to the knowledge"); *see Basso v. Miller*,

40 N.Y.2d 233, 241 (1976) ("considerations of who plaintiff is and what his purpose is

upon the land are factors which, if known, may be included in arriving at what would be

reasonable care under the circumstances").[1]  Whether or not CSX fulfilled its duty to

expected trespassers is a question of fact.  Indeed, there are several factual disputes

about whether Rhinehart was aware of the danger and what invitations CSX had laid for

expected trespassers—such as the swing gate and not roping off stairs to train cars.

Those factual disputes should be resolved by a jury, not on summary judgment.[2]

---

[1] CSX repeatedly misstates the Court's holding as suggesting that CSX might be required to install fences at all unauthorized crossings.  The Court understands that under New York law CSX is not obligated to fence.  Although New York law does not impose a duty to fence on railroads, it does impose on them, and on all landowners, a heightened duty to expected trespassers.  And New York law does not absolve railroads from posting signs, erecting barriers, or otherwise taking reasonable steps to discourage expected trespassers in order to fulfill that duty.

[2] CSX repeatedly argues that the duty to fence tracks—even if only at locations known for trespassers—would be "enormously burdensome," pointing to that as the very reason why there is no duty to fence.  *See, e.g.*, Docket Item 123-4 at 6-7; Docket Item 129-2 at 5.  This Court agrees.  But CSX has not provided undisputed evidence— strong enough to reargue its entitlement to summary judgment—that doing something to discourage trespassers here would have been "enormously burdensome."  In a footnote, CSX points to two photographs of the tracks produced by the plaintiff to prove that fencing here would be "enormously burdensome."  Docket Item 129-2 at 6 n.3.  But those two photographs show only the tracks; they do not show the swing gate, the cut-through path, or the train as it was on the day of the accident.  A modest barrier or

### B.  Preemption of a Duty to Deter Expected Trespassers

CSX argues that this Court committed clear error in deciding that the heightened

duty to expected passengers is not preempted by the FRSA.  But this Court squarely

considered preemption in the initial decision, and CSX now does nothing more than

rehash its preemption argument—an argument that it initially made only in a footnote

but this Court fully considered nonetheless.  *See* Docket Item 92-21 at 13 n.6.

The FRSA can preempt common-law negligence claims either expressly or

impliedly.  *See Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013).  Here,

for example, if the FRSA itself substantially subsumes the heightened duty, then the

duty is expressly preempted; if the heightened duty frustrates Congress's objectives in

passing the FRSA, then the duty is impliedly preempted.  *See id.* at 178; *Hillsborough*

*Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).  CSX does not

demonstrate that its heightened duty to expected trespassers under New York law is

either expressly or impliedly preempted by the FRSA.

CSX points to 49 U.S.C. § 20153 of the FRSA regarding "Audible warnings at

highway-rail grade crossings" to support its preemption argument.  Docket 123-4 at 9.  It

claims that by limiting the application of those regulations to only authorized crossings,

Congress meant to preclude states from enforcing common-law safety measures at

unauthorized crossings.  But that does not follow.  First, laws concerning authorized

crossings say nothing about a heightened duty to expected trespassers at unauthorized

---

warning where the cut-through opened to the tracks might have done the trick to deter
the expected trespassers.  As the record now stands, that is a question of fact for the
jury, and summary judgment is not warranted.  These two photographs—like the maps
in CSX's summary judgment brief—do not dissuade the Court from that conclusion.

crossings—let alone substantially subsume that duty.  Second, a heightened state-law

duty to trespassers at known but unauthorized crossings does not frustrate Congress's

objectives in passing the FRSA.  Indeed, the FRSA was enacted "to promote safety in

every area of railroad operations and reduce railroad-related accidents and incidents."

*Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (quoting 49 U.S.C. § 20101).

So there is no reason to believe that by setting standards that apply at authorized

crossings, Congress implied that no standards could apply anywhere else.  Stated

another way, the FRSA does not suggest that railroads—unlike other landowners in

New York—have no heightened duty to expected trespassers.  *See Michigan Southern*

*R.R. Co. v. City of Kendallville*, 251 F.3d 1152, 1154 (7th Cir. 2001) (observing that

state laws, regulations or orders "which are more strict than federal regulations when

stricter regulation is necessary to address a specifically local problem" are exempted

from preemption by the FRSA).

### C.    Duty to Warn

Finally, CSX argues that it had no duty to warn expected trespassers because

railroad tracks establish an open and obvious risk as a matter of law.  Docket Item

123-4 at 13.  But again, CSX fails to understand the fact-specific inquiry at issue here.

This Court understands that "[w]hile the issue of whether a hazard is latent or

open and obvious is generally fact-specific and thus usually a jury question, a court may

determine that a risk was open and obvious as a matter of law when the established

facts compel that conclusion, and may do so on the basis of clear and undisputed

evidence."  *Saltz v. Wal-Mart Stores, Inc.*, 2013 WL 405702, 69 (2d Cir. Feb. 4, 2013)

(summary order) (quoting *Tagle v. Jakob,* 97 N.Y.2d 165 (2001)).  But the cases on

which CSX relies once again are distinguishable or without precedential weight—for example, interpreting the laws of Louisiana.  Indeed, one case CSX cites to support its position that tracks themselves are an open and obvious danger did not result in summary judgment for the railroad but rather in another trial to determine whether the railroad was negligent in failing to warn.  *Merenda v. Consol. Rail Corp.*, 248 A.D.2d 684, 686 (2d Dep't 1998).  Again, there is no reason for this Court to revisit its decision.

## D.    Preemption of a Duty to Warn

CSX claims that this Court also erred by not finding the duty to warn to be impliedly preempted by the FRSA.  As noted above, however, this Court does not see how enforcing a heightened duty to expected trespassers frustrates Congress's objective "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  *See Shanklin*, 529 U.S. at 347; *Hillsborough*, 471 U.S. at 713.

## E.    Cross-Motion for Reconsideration

Rhinehart's cross-motion to reconsider also does nothing more than rehash his earlier arguments.  Moreover, the cross-motion cites only *Moody v. CSX Transportation*, 07-CV-6398, which does not change controlling law.  Because the cross-motion does not raise any changes in the law or in the evidence—or any clear errors to correct or injustices to prevent—it is denied.[3]

---

[3] CSX argues that Rhinehart's cross-motion for reconsideration was untimely and otherwise procedurally deficient.  Having denied the motion on other grounds, this Court does not address those procedural objections.

## II.  INTERLOCUTORY APPEAL

Having found no compelling reason to reconsider its initial decision, this Court considers CSX's request for an interlocutory appeal.  To succeed on a motion for an interlocutory appeal, the moving party must show that the appeal involves a controlling question of law over which there is a substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  And even if these criteria appear to be met, "[d]istrict courts [ ] have independent and unreviewable authority to deny certification." *Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 440 (W.D.N.Y. 2017) (quotation and citation omitted).  Indeed, "[i]nterlocutory appeals are strongly disfavored in federal practice." *In re Adelphia Commc'ns Corp.*, 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008); *see Westwood Pharm.*, 964 F.2d at 89 ("[W]e urge the district courts to exercise great care in making a § 1292(b) certification.  For after all, the district courts are presumed to be more familiar with a case than is the court of appeals prior to briefing and argument.")

Here, CSX has not established the sort of extraordinary circumstances that might counsel in favor of an exception to the rule against interlocutory appeals in the federal courts.  For example, CSX's claim that this Court's ruling was incorrect does not demonstrate the sort of substantial ground for difference of opinion that might suffice. *See Wausau Bus. Ins. Co. v. Turner Const. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001).

> [T]o satisfy this prerequisite there must be "substantial doubt" that the district court's order was correct.  A claim that the district court's opinion was incorrect does not, standing alone, support a finding of a substantial ground for a difference of opinion.

*N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*, 1993 WL 255101, at *2 (S.D.N.Y.

July 1, 1993) (internal citation omitted).  Moreover, aside from asserting that the case

presents issues of first impression, CSX provides no basis to substantially doubt the

validity of this Court's initial decision.  *See id.* ("Further, the mere fact that a disputed

issue is a question of first impression is insufficient to demonstrate substantial grounds

for a difference of opinion.")  Instead, the cases CSX cites support denying summary

judgment in a fact-intensive railroad injury case.

In sum, CSX has failed to demonstrate exceptional circumstances warranting an

interlocutory appeal.  Especially because interlocutory appeals are disfavored in federal

courts, CSX's motion for an order authorizing an interlocutory appeal is denied.

## III.    MOTION TO STRIKE

Finally, CSX asks this Court to reconsider its decision to adopt Judge Foschio's

recommendation not to strike several opinions of the plaintiff's expert, Jimmy Scott.  For

example, CSX argues that Scott's classification of the cut-through as a "public crossing"

is in direct conflict with this Court's preemption analysis and is a legal conclusion.  As

noted in footnote twelve of the Report and Recommendation—a portion fully adopted by

this Court—however,

> A plain reading of Scott's Report . . . fails to establish Scott intended to limit
> the term "public crossing" to the FRSA definition. . . . Moreover, courts within
> the Second Circuit have applied New York tort law to cases involving
> accidents at public railroad crossings, irrespective of the FRSA. *See, e.g.,*
> *Bowen*, 363 F. Supp. 2d at 375-76.

Docket Item 98 at 14 n.12.  Because Scott's use of the term "public crossing" is broader

than the FRSA definition, it need not be excluded.

CSX also argues that including Scott's opinion that the train was stopped for an unreasonable amount of time is irreconcilable with this Court's determination that all claims based on CSX's internal rules are preempted and that the testimony is irrelevant to CSX's heightened duty to expected trespassers. But a jury may consider the length of time that train is stopped when evaluating CSX's responsibility to expected trespassers. Indeed, CSX concedes that a remaining theory of liability is "a duty to warn trespassers not to climb on stopped trains." Docket Item 123-4 at 19. The length of time that a train is stopped may well be relevant to that evaluation. For example, if a train is stopped for an inordinate length of time on a known but unauthorized crossing, a jury may find CSX negligent for not sending an employee to that crossing to deter trespassers from climbing on the train. Moreover, the decision not to preclude this testimony now does not mean that it necessarily will be admitted at trial. The plaintiff still will have to establish the required foundation and meet other evidentiary prerequisites.

The motion to reconsider striking the opinions of the plaintiff's expert is therefore denied.

## CONCLUSION

This case has been litigated for many years. Because neither CSX nor Rhinehart raise compelling reasons for this Court to reconsider its initial summary judgment decision, and because CSX does not demonstrate that an interlocutory appeal

would promote the fair and efficient resolution of this case, both the defendant's motion and the plaintiff's cross-motion are DENIED.

SO ORDERED.

Dated:      January 23, 2018
              Buffalo, New York

                      *s/Lawrence J. Vilardo*
                      LAWRENCE J. VILARDO
                      UNITED STATES DISTRICT JUDGE